IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-68

 No. COA18-895-2

 Filed 16 March 2021

Wake County, No. 16 CRS 215839

STATE OF NORTH CAROLINA

 v.

CHAD CAMERON COPLEY

 Appeal by defendant from judgment entered 23 February 2018 by Judge

Michael J. O’Foghludha in Wake County Superior Court. Originally heard in the

Court of Appeals 13 February 2019, and opinion filed 7 May 2019 reversing and

remanding for new trial, State v. Copley, 265 N.C. App. 254, 828 S.E.2d 35 (2019).

Reversed and remanded to the Court of Appeals by opinion of the North Carolina

Supreme Court filed 3 April 2020, 374 N.C. 224, 839 S.E.2d 726 (2020), for

consideration of defendant’s remaining arguments on appeal.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 Massengale & Ozer, by Marilyn G. Ozer, for defendant.

 ARROWOOD, Judge.

 I. Appellate History
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

¶1 On appeal, this Court, over a dissent, vacated defendant’s convictions and

 remanded for retrial by reason that the State inappropriately discussed the race of

 defendant and the victim in his closing argument. State v. Copley, 265 N.C. App. 254,

 257, 828 S.E.2d 35, 37-38 (2019). The Court did not reach defendant’s remaining

 issues on appeal. Based upon the dissent, id. at 269-79, 828 S.E.2d at 45-50

 (Arrowood, J., dissenting), the State appealed to the Supreme Court of North

 Carolina. Finding no prejudicial error in the prosecutor’s closing argument with

 respect to race, our Supreme Court reversed and remanded for this Court to consider

 defendant’s remaining arguments. State v. Copley, 374 N.C. 224, 232, 839 S.E.2d

 726, 731 (2020). Upon consideration of defendant’s remaining arguments on remand,

 we find defendant received a fair trial free from error.

 II. Background

¶2 On 22 August 2016, a Wake County Grand Jury indicted defendant on one

 count of first-degree murder. The matter came on for trial on 12 February 2018 in

 Wake County Superior Court, the Honorable Michael J. O’Foghludha presiding. The

 State’s evidence tended to show the following.

¶3 On 6 August 2016, Jalen Lewis (“Mr. Lewis”) hosted a party at his parents’

 home, two or three houses down from defendant’s house. Three of his guests, Kourey

 Thomas (“Mr. Thomas” or “victim”), David Walker (“Mr. Walker”), and Chris Malone

 (“Mr. Malone”) arrived at the party in Mr. Walker’s car around midnight, and parked
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

 on the street. As the party progressed, a group of approximately twenty people

 showed up that Mr. Lewis and his friends did not know. After about ten minutes, the

 group was asked to leave. The group agreed, and walked towards their cars,

 congregating near the curb in front of defendant’s house to discuss where to go next.

¶4 Defendant, who was inside his home, became disturbed by the group’s noise.

 He yelled out an upstairs window, “[y]ou guys keep it the f*** down; I’m trying to

 sleep in here.” He then called 911, telling the operator he was “locked and loaded”

 and going to secure the neighborhood. Defendant also stated, “I’m going to kill him.”

 The operator attempted to obtain more information from defendant, but the phone

 call was terminated.

¶5 Meanwhile, a law enforcement officer conducted a traffic stop nearby, causing

 the lights of his police cruiser to reflect down the street. Mr. Thomas, Mr. Walker,

 and Mr. Malone saw the lights and became worried about the presence of law

 enforcement because Mr. Thomas had a marijuana grinder on his person.

¶6 The three men decided to leave the party due to the police presence. Mr.

 Thomas left the party first. He ran from Mr. Lewis’ house, cutting across the yard,

 towards Mr. Walker’s car. Before he could reach the car, he was shot by defendant,

 who fired without warning, from his dark, closed garage. EMS arrived and took Mr.

 Thomas to the hospital, where he died as a result of the gunshot.
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

¶7 Deputy Barry Carroll of the Wake County Sheriff’s Office (“Deputy Carroll”),

 one of the first investigators on the scene, approached defendant’s house after

 observing broken glass in defendant’s driveway and a broken window in the garage.

 He shined a light through a window, and saw defendant step through a door from the

 house into the garage. Deputy Carroll asked defendant if he had shot someone.

 Defendant admitted to shooting Mr. Thomas. Deputy Carroll requested defendant

 open the front door. Defendant complied and showed Deputy Carroll the shotgun he

 used to shoot the victim.

¶8 At the close of the State’s evidence, defendant moved to dismiss the case. The

 trial court denied the motion. Defendant presented evidence tending to show as

 follows.

¶9 Defendant argued with his wife on the morning of 6 August 2016, and then

 spent the day drinking, sleeping, and “just hanging out in the garage.” After going

 to sleep that evening, he woke and saw the group leaving Mr. Lewis’ party. Irritated

 at the noise the group made, he yelled, “[y]ou guys keep it the f*** down; I’m trying

 to sleep in here” out the window. Members of the group yelled back, “ ‘Shut the f***

 up; f*** you; go inside, white boy,’ things of that nature.” He saw “firearms in the

 crowd[,]” and two individuals “lifted their shirts up” to flash their weapons. He

 testified that he called 911 at his wife’s request. When he called 911, he thought it

 was his son and his son’s friends outside, and stated that the “him” he referred to
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

 killing while on the call was his son. After ending the call with 911, he grabbed his

 shotgun and loaded five rounds.

¶ 10 When he discovered his son was not part of the group outside, he told his son

 to get a rifle and go upstairs for safety. He again yelled at the group outside,

 instructing them to leave the premises and informing them that he had a gun.

 Defendant claimed Mr. Thomas then began to walk towards defendant’s house and

 to reach for a gun, so he shot him.

¶ 11 At the close of defendant’s evidence, he renewed his motion to dismiss, which

 the trial court denied. On 22 February 2018, the jury found defendant guilty of first-

 degree murder by premeditation and deliberation and by lying in wait. The trial

 court sentenced defendant to life without parole. Defendant timely noted his appeal.

 III. Discussion

¶ 12 In his remaining arguments, defendant contends: (1) the trial court erred by

 allowing the State to make improper statements of law during its closing argument

 concerning the aggressor doctrine and defense of habitation; (2) the trial court plainly

 erred by instructing the jury that the defense of habitation was not available if

 defendant was the aggressor; and (3) the trial court erred by instructing the jury on

 the theory of first-degree murder by lying in wait. Addressing each in turn, we find

 no error.

 A. Closing Argument
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

¶ 13 Defendant first argues the trial court violated his constitutional rights when it

 failed to intervene when the State argued incorrect law concerning the aggressor

 doctrine of self-defense and defense of habitation in its closing argument. We

 disagree.

¶ 14 Because defendant failed to object on this basis at trial, we review the allegedly

 improper closing arguments for

 whether the remarks were so grossly improper that the trial
 court committed reversible error by failing to intervene ex
 mero motu. In other words, the reviewing court must
 determine whether the argument in question strayed far
 enough from the parameters of propriety that the trial court,
 in order to protect the rights of the parties and the sanctity of
 the proceedings, should have intervened on its own accord
 and: (1) precluded other similar remarks from the offending
 attorney; and/or (2) instructed the jury to disregard the
 improper comments already made.

 State v. Jones, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

¶ 15 First, defendant contends the State erred when it told the jury defendant could

 be found to be the aggressor if he left the second floor of his house and went

 downstairs to the garage because this argument is contrary to State v. Kuhns, 260

 N.C. App. 281, 817 S.E.2d 828 (2018) and grossly prejudicial.

¶ 16 Defendant does not quote the language he refers to as egregious, and only

 provides a citation to a page in the transcript where the prosecutor discusses the

 aggressor doctrine. Upon review of the transcript, it is clear the references to the
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

 aggressor by the prosecutor in this portion of the transcript arose in the context of

 self-defense, not the habitation defense:

 And I’m going to talk more about some of the things that
 he told you later, but what I want to get to is this excused
 killing by self-defense, okay?

 ....

 He doesn’t have to retreat from his home, but if you’re
 upstairs and somebody makes a show of force at you, it's
 not retreating to stay upstairs. It’s, in fact, the opposite of
 that, right? But if you take your loaded shotgun and go
 down to the garage and if you buy him at his word, which I
 don’t know that you can, you are not retreating. You are
 being aggressive. You’re continuing your aggressive
 nature in that case.

 (Emphasis added). Therefore, defendant’s argument that the trial court erred by

 failing to intervene when the State misstated the law on the habitation defense is

 without merit.

¶ 17 Second, defendant argues the State incorrectly added exceptions to the

 habitation defense that our statutes only permit as exceptions to self-defense.

 Defendant maintains the State committed this error in the following portion of its

 argument:

 You can consider the size, age, strength of defendant as
 compared to the victim. . . . You’ve got somebody who’s
 standing at this point in a yard and you’ve got somebody
 on a second floor window. How much danger is he to him
 at that point? Especially at that point, he’s not even saying
 they’re pointing a gun at him. All they’ve done is this –
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

 (indicating) – if you buy him at his word.

 ....

 Reputation for violence, if any, of the victim, you didn’t
 hear that he was a violent guy. You didn’t hear that he was
 a gangbanger. All you heard is that he was actually the
 opposite of that, right?

 We disagree. As with defendant’s first argument, this portion of the transcript refers

 to self-defense, not the habitation defense. Defendant’s argument is without merit.

 B. Instruction on Defense of Habitation

¶ 18 Next, defendant argues the trial court plainly erred by instructing the jury that

 the defense of habitation was not an available justification if defendant was the

 aggressor. Defendant alleges plain error because he did not object on this basis at

 trial. N.C.R. App. P. 10(a)(2), (a)(4) (2019). We decline to reach this assignment of

 error.

¶ 19 During the charge conference, the trial court stated that it would give N.C.

 Pattern Jury Instruction 308.80, defense of habitation. The trial court added it would

 include footnote four on aggression, which provides the defense is not available to one

 who provokes the use of force against himself, unless the person provoked responded

 with more serious force. Defense counsel did not object to the requested further

 instructions on the “aggressor” doctrine, but asked the trial court: “[I]f the jury is

 going to be given instruction on provocation, that they be informed on the law of
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

 initial aggression which is intended and designed to calculate this inspiring a fight.”

 Defendant’s request was honored by the trial court giving N.C. Pattern Jury

 Instruction 206.10.

¶ 20 In State v. White, 349 N.C. 535, 508 S.E.2d 253 (1998), our Supreme Court

 held:

 Counsel . . . did not object when given the
 opportunity either at the charge conference or after the
 charge had been given. In fact, defense counsel
 affirmatively approved the instructions during the charge
 conference. Where a defendant tells the trial court that he
 has no objection to an instruction, he will not be heard to
 complain on appeal.

 Id. at 570, 508 S.E.2d at 275 (citing State v. Wilkinson, 344 N.C. 198, 213, 474 S.E.2d

 375, 396 (1996)).

¶ 21 Defendant’s trial counsel’s requests and active participation in the formulation

 of the instructions during the charge conference waives any right he would have to

 have the instructions reviewed even under a plain error analysis. Thus, we decline

 to reach this issue.

 C. Lying in Wait

¶ 22 Finally, defendant argues the trial court committed reversible error by

 instructing the jury on the theory of lying in wait because the evidence did not support

 the instruction. We disagree.
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

¶ 23 “[Arguments] challenging the trial court’s decisions regarding jury instructions

 are reviewed de novo by this Court.” State v. Osorio, 196 N.C. App. 458, 466, 675

 S.E.2d 144, 149 (2009) (citations omitted). “Where jury instructions are given without

 supporting evidence, a new trial is required.” State v. Porter, 340 N.C. 320, 331, 457

 S.E.2d 716, 721 (1995) (citation omitted). However, if “a request for instructions is

 correct in law and supported by the evidence in the case, the court must give the

 instruction in substance.” State v. Thompson, 328 N.C. 477, 489, 402 S.E.2d 386, 392

 (1991).

¶ 24 Our Supreme Court defines “first-degree murder perpetrated by means of lying

 in wait” as “a killing where the assassin has stationed himself or is lying in ambush

 for a private attack upon his victim.” State v. Leroux, 326 N.C. 368, 375, 390 S.E.2d

 314, 320 (1990) (citations and internal quotation marks omitted). The perpetrator

 must intentionally assault “the victim, proximately causing the victim’s death.” State

 v. Grullon, 240 N.C. App. 55, 60, 770 S.E.2d 379, 383 (2015) (citation and internal

 quotation marks omitted).

¶ 25 Defendant argues the evidence does not support an instruction on first-degree

 murder by lying in wait because the evidence did not show he laid in wait to shoot a

 victim, but, rather, it shows he armed himself to protect his house from intruders

 until police arrived to disperse the individuals gathered in front of his house. We

 disagree.
 STATE V. COPLEY

 2021-NCCOA-68

 Opinion of the Court

¶ 26 The State put forth sufficient evidence to support an instruction on lying in

 wait, even assuming arguendo that defendant offered evidence supporting his

 conflicting theory on defense of habitation. The State’s evidence shows defendant

 concealed himself in his darkened garage with a shotgun, equipped with a

 suppression device. Defendant shot the victim, firing the shotgun through the

 garage’s window. The shot bewildered bystanders because it was unclear what

 happened, and defendant had not warned the crowd before firing his weapon.

¶ 27 This evidence supports the lying in wait instruction because it tends to show

 defendant stationed himself, concealed and waiting, to shoot the victim, and this

 action proximately caused the victim’s death. Accordingly, we hold the trial court did

 not err when it instructed the jury on murder by lying in wait.

 IV. Conclusion

¶ 28 For the forgoing reasons, we find no error.

 NO ERROR.

 Judge STROUD concurs.

 Judge TYSON dissents in a separate opinion.
 No. COA18-895-2– State v. Copley

 TYSON, Judge, dissenting.

¶ 29 Defendant was inside his home with his wife and children inside. He was

 alarmed after midnight by a rowdy and armed crowd which had gathered in front of

 his home. He raised his window to tell the crowd to quiet down and leave. Some of

 the crowd members responded by yelling profanity, racial slurs, and by displaying

 weapons. Defendant called 911 to report and request for law enforcement to disperse

 the crowd. A police officer was nearby with their vehicle’s lights flashing. No officers

 responded immediately. Defendant armed himself with a shotgun and went

 downstairs to locate his son, who he believed may be outside the house. Defendant

 found his son in the converted garage that is part of the home. Defendant told his

 son to go upstairs for safety and to arm himself.

¶ 30 Defendant saw an individual in his yard coming toward his home armed with

 a gun. Defendant fired one shot from his shotgun through the window of his garage,

 striking the intruder.

¶ 31 When officers arrived and observed broken glass, he opened the door and

 admitted to firing the shotgun. Defendant gave the shotgun to the officers.

 Defendant never concealed himself, never left the interior of his home, other that

 shouting for the intruder to leave, had no prior interaction or altercation with the

 intruder, and expressed no animus toward the intruder. This evidence must be
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 viewed in the light most favorable to Defendant and for him to be given the benefit of

 every inference. Defendant objected to and specifically preserved this error of

 submitting the theory of lying in wait for the intruder to the jury, as a basis to convict

 him for first-degree murder under these facts.

¶ 32 Defendant was convicted of first-degree murder under two distinct theories of

 premeditation and deliberation and by lying in wait. The majority’s opinion fails to

 follow North Carolina’s statutory provisions and unbroken precedents to analyze

 Defendant’s murder conviction for lying in wait. Defendant’s conviction under lying

 in wait is erroneous, prejudicial, and is properly vacated. I respectfully dissent.

 I. Jury Instructions

¶ 33 During the charge conference, the following exchange took place between

 Defendant’s counsel and the trial court:

 [DEFENSE COUNSEL]: Your Honor, just to clear up the
 record, I would say that it is very appreciative the work
 Your Honor has done in order to come up with that
 compromise, and that is not lost on us. For the record, we
 are objecting to the lying in wait instruction going to the
 jury. That’s all I need to be heard about.

 THE COURT: Yes absolutely. And that’s noted, and you-
 all know how to preserve it.

¶ 34 The majority’s opinion states the prosecutor’s references to the aggressor arose

 in the portion of transcript of self-defense; however, the cited portions of the

 transcript refer to “prevent a forcible entry into the defendant’s home” and “he doesn’t
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 have to retreat from his home.” This artificial delineation ignores our Court’s many

 precedents concerning the special status of an inhabitant within the curtilage of and

 inside his home. See State v. McCombs, 297 N.C. 151, 157, 253 S.E.2d 906, 910 (1979)

 (usual rules of common law self-defense apply inside the home, except that the

 occupant does not have a duty to retreat).

¶ 35 Our Supreme Court recently held where the trial court failed to provide a

 required instruction, the error “is preserved for appellate review without further

 request or objection.” State v. Lee, 370 N.C. 671, 676, 811 S.E.2d 563, 567 (2018). In

 Lee, the trial court failed to give a requested pattern jury instruction on stand your

 ground, when the defendant had properly entered evidence to support the defense.

 Id. at 673, 811 S.E.2d at 565.

¶ 36 Our Supreme Court has held:

 [A] request for an instruction at the charge conference is
 sufficient compliance with the rule to warrant our full
 review on appeal where the requested instruction is
 subsequently promised but not given, notwithstanding any
 failure to bring the error to the trial judge’s attention at the
 end of the instructions.

 State v. Ross, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988) (citation omitted).

 Defendant’s objection is persevered and is properly before us.

 II. Lying in Wait

 A. Preservation of Error
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

¶ 37 Defendant argues the trial court erred by instructing the jury on him lying in

 wait to commit first-degree murder. As noted above, Defense counsel properly

 preserved this issue for appellate review:

 [DEFENSE COUNSEL]: For the record, we are objecting
 to the lying in wait instruction going to the jury. That’s all
 I need to be heard about.

 The COURT: Yes absolutely. And that’s noted, and you-
 all know how to preserve it.

¶ 38 The undisputed evidence shows Defendant was located inside of his residence

 with his family after being alarmed by an armed and noisy crowd after midnight for

 the entire time during the events leading to the shooting:

 When [Defendant] discovered his son was inside the garage
 and not part of the group outside, he told his son to go
 upstairs for safety and to get a rifle. He again yelled at the
 group outside, instructing them to leave the premises and
 informing them that he was armed. Defendant claimed
 [the intruder] began running towards Defendant’s house
 and pulled out a gun. Defendant fired one shot from his
 shotgun towards [the intruder] through the window of his
 garage.

 State v. Copley, 265 N.C. App. 254, 257, 828 S.E.2d 35, 37-38 (2019), rev’d and

 remanded, 374 N.C. 224, 839 S.E.2d 726 (2020).

¶ 39 During the trial court’s instruction for the theories of first-degree murder, the

 jury was instructed on lying in wait as follows:

 The [D]efendant has also been charged with first degree
 murder perpetrated while lying in wait. For you to find the
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 defendant guilty of this offense, the State must prove three
 things beyond a reasonable doubt. First, that the
 defendant lay in wait for the victim; that is, waited and
 watched for the victim in ambush for a private attack on
 him. Second, that he intentionally assaulted the victim.
 And, third that the [D]efendant’s act was a proximate
 cause of the victim’s death.

¶ 40 The natural and common law since ancient times, and our State’s statutes and

 unbroken precedents, have recognized an individual’s fundamental and absolute

 right to protect and defend themselves, their family, and their home with deadly force

 from individuals who are armed and violent.

 [T]here exists a law, not written down anywhere but inborn
 in our hearts; a law which comes to us not by training or
 custom or reading but by derivation and absorption and
 adoption from nature itself; a law which has come to us not
 from theory but from practice, not by instruction but by
 natural intuition. I refer to the law which lays it down that,
 if our lives are endangered by plots or violence or armed
 robbers or enemies, any and every method of protecting
 ourselves is morally right. When weapons reduce
 themselves to silence, the laws no longer expect one to
 await their pronouncements. For people who decide to wait
 for these will have to wait for justice too – and meanwhile
 they must suffer injustice first. Indeed, even the wisdom of
 the law itself, by a sort of tacit implication, permits self-
 defense, because it does not actually forbid men to kill;
 what it does, instead, is to forbid the bearing of a weapon
 with the intention to kill. When, therefore, an inquiry
 passes beyond the mere question of the weapon and starts
 to consider the motive, a man who has used arms in self-
 defense is not regarded as having carried them with a
 homicidal aim.
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 Marcus Tuillius Cicero, Selected Political Speeches, trans. Michael Grant (New York:

 Penguin, 1969), p. 222.

¶ 41 Our Supreme Court confirmed: “The principle that one does not have to retreat

 regardless of the nature of the assault upon him when he is in his own home and

 acting in defense of himself, his family and his habitation is firmly embedded in our

 law.” McCombs, 297 N.C. at 156, 253 S.E.2d at 910 (emphasis supplied) (citations

 omitted); see N.C. Gen. Stat. § 14-51.2(b) (2019).

 B. State v. Coley

¶ 42 Our Supreme Court recently further examined and unanimously upheld a

 similar assertion of defense of one’s habitation in State v. Coley, 375 N.C. 156, 159-

 60, 846 S.E.2d 455, 457-58 (2020):

 The jury charge is one of the most critical parts of a
 criminal trial. It is the duty of the trial court to instruct on
 all substantial features of a case raised by the evidence.
 This Court has consistently held that where competent
 evidence of self-defense is presented at trial, the defendant
 is entitled to an instruction on this defense, as it is a
 substantial and essential feature of the case, and the trial
 judge must give the instruction even absent any specific
 request by the defendant. When supported by competent
 evidence, self-defense unquestionably becomes a
 substantial and essential feature of a criminal case. In
 determining whether a defendant has presented competent
 evidence sufficient to support a self-defense instruction, we
 take the evidence as true and consider it in the light most
 favorable to the defendant. Once a showing is made that the
 defendant has presented such competent evidence, the
 court must charge on this aspect even though there is
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 contradictory evidence by the State or discrepancies in
 defendant’s evidence. A defendant entitled to any self-
 defense instruction is entitled to a complete self-defense
 instruction, which includes the relevant stand-your-
 ground provision.

 Id. (emphasis original and supplied) (citations, alterations, and internal quotation

 marks omitted).

¶ 43 Defendant’s proper and preserved objection to the submission of and the jury

 instruction on lying in wait shows the trial court erroneously failed to include the

 correlation and preemption of Defendant’s common law and statutory rights to

 defense of self, family, and habitation to this submission and instruction. No evidence

 tends to show Defendant was lying in wait, luring, or secreting himself, other than

 remaining inside of his home under threats by an armed crowd. He repeatedly told

 them to leave and sought assistance from law enforcement. Defendant’s evidence and

 the inferences therefrom must be submitted, instructed, and considered most

 favorably to him.

 C. Statutory Self-Defense, Defense of Others and Habitation

¶ 44 N.C. Gen. Stat. § 14-51.3(a) provides:

 A person is justified in using force, except deadly force,
 against another when and to the extent that the person
 reasonably believes that the conduct is necessary to defend
 himself or herself or another against the other’s imminent
 use of unlawful force. However, a person is justified in the
 use of deadly force and does not have a duty to retreat in
 any place he or she has the lawful right to be if either of the
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 following applies:

 (1) He or she reasonably believes that such force is
 necessary to prevent imminent death or great
 bodily harm to himself or herself or another.

 (2) Under the circumstances permitted pursuant to
 G.S. 14-51.2.

 N.C. Gen. Stat. § 14-51.3(a) (2019) (emphasis supplied).

¶ 45 When a defendant is inside his own home and under armed assault, N.C. Gen.

 Stat. § 14-51.2 provides:

 (b) The lawful occupant of a home, motor vehicle, or
 workplace is presumed to have held a reasonable fear of
 imminent death or serious bodily harm to himself or herself
 or another when using defensive force that is intended or
 likely to cause death or serious bodily harm to another if
 both of the following apply:

 (1) The person against whom the defensive force was
 used was in the process of unlawfully and forcefully
 entering, or had unlawfully and forcibly entered, a
 home, motor vehicle, or workplace, or if that person
 had removed or was attempting to remove another
 against that person’s will from the home, motor
 vehicle, or workplace.

 The person who uses defensive force knew or had reason to
 believe that an unlawful and forcible entry or unlawful and
 forcible act was occurring or had occurred.

 (c) The presumption set forth in subsection (b) of this
 section shall be rebuttable and does not apply in any of the
 following circumstances:

 (1) The person against whom the defensive force is
 used has the right to be in or is a lawful resident of
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 the home, motor vehicle, or workplace, such as an
 owner or lessee, and there is not an injunction for
 protection from domestic violence or a written
 pretrial supervision order of no contact against that
 person.

 (2) The person sought to be removed from the home,
 motor vehicle, or workplace is a child or grandchild
 or is otherwise in the lawful custody or under the
 lawful guardianship of the person against whom the
 defensive force is used.

 (3) The person who uses defensive force is engaged
 in, attempting to escape from, or using the home,
 motor vehicle, or workplace to further any criminal
 offense that involves the use or threat of physical
 force or violence against any individual.

 (4) The person against whom the defensive force is
 used is a law enforcement officer or bail bondsman
 who enters or attempts to enter a home, motor
 vehicle, or workplace in the lawful performance of
 his or her official duties, and the officer or bail
 bondsman identified himself or herself in accordance
 with any applicable law or the person using force
 knew or reasonably should have known that the
 person entering or attempting to enter was a law
 enforcement officer or bail bondsman in the lawful
 performance of his or her official duties.

 (5) The person against whom the defensive force is
 used (i) has discontinued all efforts to unlawfully
 and forcefully enter the home, motor vehicle, or
 workplace and (ii) has exited the home, motor
 vehicle, or workplace.

(d) A person who unlawfully and by force enters or attempts
to enter a person's home, motor vehicle, or workplace is
presumed to be doing so with the intent to commit an
unlawful act involving force or violence.
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 (e) A person who uses force as permitted by this section is
 justified in using such force and is immune from civil or
 criminal liability for the use of such force, unless the person
 against whom force was used is a law enforcement officer
 or bail bondsman who was lawfully acting in the
 performance of his or her official duties and the officer or
 bail bondsman identified himself or herself in accordance
 with any applicable law or the person using force knew or
 reasonably should have known that the person was a law
 enforcement officer or bail bondsman in the lawful
 performance of his or her official duties.

 (f) A lawful occupant within his or her home, motor vehicle,
 or workplace does not have a duty to retreat from an
 intruder in the circumstances described in this section.

 (g) This section is not intended to repeal or limit any other
 defense that may exist under the common law.

 N.C. Gen. Stat. § 14-51.2 (2019) (emphasis supplied).

¶ 46 Our Supreme Court has also held: “Where there is evidence that defendant

 acted in self-defense, the court must charge on this aspect even though there is

 contradictory evidence by the State or discrepancies in defendant’s evidence.” State

 v. Dooley, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) (emphasis supplied) (citations

 omitted).

 D. State’s Assertion of Lying in Wait

¶ 47 To warrant an instruction and support a conviction for first-degree murder

 under the theory of lying in wait, precedents mandate the trial court instruct the jury

 that the State carries the burden to disprove Defendant’s assertion of self-defense,
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 defense of others, and defense of his habitation. See N.C.P.I. - - Crim. 308.45A, 308.80

 (2017). Also, the jury must be instructed that the evidence and inferences thereon

 must be reviewed in the light most favorable to Defendant to determine whether

 Defendant’s defense of his self, home, or family did not fall under one of the exceptions

 articulated in N.C. Gen. Stat. § 14-51.2(c).

¶ 48 Our Supreme Court further held in Coley:

 [p]resuming [that] a conflict in the evidence exists . . . it is
 to be resolved by the jury, properly instructed, it is
 appropriately within the purview of the jury to resolve any
 conflicts in the evidence presented at trial and to render
 verdicts upon being properly instructed by the trial court
 based upon the evidence which competently and
 sufficiently supported the submission of such instructions
 to the jury for collective consideration.

 Coley, 375 N.C. at 163, 846 S.E.2d at 460 (alterations in original) (emphasis supplied)

 (citations and internal quotation marks omitted).

¶ 49 In this case, as in Coley, the trial court improperly submitted and failed to

 instruct the jury on this requirement despite Defendant’s express requests and

 preserved objections. Undisputed evidence shows Defendant was located inside of

 his home with his family during the entire time and sequence of events, during which

 he testified an armed intruder was running in his yard toward his home.

¶ 50 He called 911 to report the activities of and threats from a large belligerent

 and armed group massed outside his home after midnight and to request law
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 enforcement to respond. After the 911 call, Defendant testified he left his bedroom

 and went downstairs to determine if his teenage son was outside. Defendant found

 his son was safe inside the home downstairs and sent him upstairs to greater safety.

 Any assertion that his prior words, behavior, or actions made him the aggressor while

 inside his own home is fallacious. Even if so, Defendant was entitled to proper jury

 instructions, which the trial court failed to provide to his prejudice. Id.

¶ 51 The majority’s opinion asserts the State put forth sufficient evidence to support

 an instruction on lying in wait. What evidence? That Defendant was inside of his

 home and protecting his family with a shotgun, while facing an armed intruder after

 midnight with no response from his 911 call? The State was required to disprove

 Defendant’s claims beyond a reasonable doubt of self-defense prior to the jury

 reaching Defendant’s claims of lying in wait. N.C.P.I. - - Crim. 308.45A, 308.80

 (2017). The critical error by the trial court is the lying in wait submission and

 instruction, even if supported by the State’s evidence, is not independent of

 Defendant’s rights to mandatory and complete instructions on his preemptive rights.

 Defendant clearly preserved his preeminent right to defend himself, his family, and

 their habitation against the actions of an armed intruder.

¶ 52 All the evidence and inferences thereon must be viewed in the light most

 favorable to Defendant by the jury properly instructed on the law and the State’s

 burdens. See Dooley, 285 N.C. at 163, 203 S.E.2d at 818. “When determining whether
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 the evidence is sufficient to entitle a defendant to jury instructions on a defense. . . ,

 courts must consider the evidence in the light most favorable to [the] defendant.”

 State v. Mash, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citations omitted).

 Defendant carried no burden once competent evidence of self-defense, defense of

 others and habitation was admitted. A notion to rely solely upon the sufficiency of

 the State’s evidence is erroneous and directly contrary to our binding precedents.

¶ 53 The trial court’s failures denied Defendant of the most fundamental rights to

 protect and defend himself, his family, and their home. The majority’s opinion lacks

 any analysis of the State’s burdens, Defendant’s preemptive rights, and the prejudice

 he has suffered in their denial.

¶ 54 In State v. Bridges, 178 N.C. 733, 738, 101 S.E.2d 29, 32 (1919), officers were

 lawfully serving an arrest warrant. The defendant secreted himself and waited

 outside and behind a corner to fire upon the officers. Id. at 739, 101 S.E.2d at 32

 (“[A]nd you further find that the witness, . . . , after going to the house, intentionally

 and purposely pointed his pistol at the defendant Bridges, and that Bridges, under

 these circumstances, apprehended and had reasonable grounds to apprehend either

 that he was in danger of great bodily harm, or in danger of the loss of his life, you will

 then find that he had a legal right to use such force as was necessary, or apparently

 necessary, to repel the assault of . . . and protect himself, and the necessity of dong so

 was real or apparent . . ., viewing all the facts and circumstances as they reasonably
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 appeared to Bridges at the time the shot was fired.”). Lying in wait “refers to a killing

 where the assassin has stationed himself or is lying in ambush for a private attack

 upon his victim.” State v. Allison, 298 N.C. 135, 147, 257 S.E.2d 417, 425 (1979).

¶ 55 No testimony showed Defendant had any prior association, connection, or

 animus towards the neighbors across the street or to the armed and unruly crowd

 that gathered in front of his home and threatened him. After being startled by a

 threatening situation, with a massed, armed crowd at the edge of the yard, who

 displayed weapons and shouted racial epithets, Defendant called 911, retrieved his

 shotgun and walked downstairs to his garage to search for his teenage son.

¶ 56 The jury’s instructions on lying in wait did not require the State to disprove

 nor require the jury to consider and rectify Defendant’s rights to self-defense, defense

 of his family, and his habitation in the light most favorable to Defendant or to place

 the burden on the State to overcome Defendant’s defenses and presumptions. See id.

 This preserved error of submitting lying in wait without proper instructions was

 prejudicial to Defendant as a basis to support his conviction.

 E. State v. Stephens

¶ 57 This Court, with two members of this panel, recently examined self-defense in

 State v. Stephens, __ N.C. App. __, __, 853 S.E.2d 488, 496 (2020). The jury was

 improperly instructed on an individual’s right to self-defense. The jury in Stephens

 was not allowed to rectify the defendant’s rights to self-defense when there was a
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

 dispute over whether he was the first aggressor. Id. at __, 488 S.E.2d at 492. The

 defendant, in Stephens, lawfully carried a weapon as he entered someone’s property,

 whose owners had released a dog that had killed his child’s pet. Id. Defendant put

 on facts, which viewed in the light most favorable to him, asserted the property owner

 illegally retrieved a weapon and repeatedly fired that weapon at him, hitting him and

 his clothing. Id.

¶ 58 Here, the State asserted Defendant had acted with aggression by arming

 himself inside his own home with his family present in the face of armed threats

 outside. This notion is contrary to our unbroken binding precedent. Our State has

 long held a defendant who armed himself in anticipation of a fight, and failed to avoid

 the fight, was not the aggressor. State v. Tann, 57 N.C. App. 527, 531, 291 S.E.2d

 824, 827 (1982).

¶ 59 To support a murder conviction under the theory of lying in wait, the jury must

 be instructed, find, and conclude the evidence, when viewed in the light most

 favorable to Defendant, fell under one of the exceptions articulated in N.C. Gen. Stat.

 § 14-51.2 (c). However, despite Defendant’s preserved request and objection, and trial

 court’s clear and express duty to instruct on all the evidence and the State’s burden,

 the trial court failed to instruct the jury on these requirements. The jury was

 instructed over Defendant’s express objections on a theory that did not allow them to

 consider the evidence in the light most favorable to Defendant.
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

¶ 60 The jury failed to rectify Defendant’s presumptive rights to self-defense,

 defense of others, and defense of his habitation under N.C. Gen. Stat. §§ 14-51.3(a)

 and 14-51.2 while he was located inside of his home with his family from beginning

 to end. No evidence tends to show Defendant hid, lured the intruder, set a trap, nor

 did anything to support a conviction under a theory of lying in wait, while he was

 within his own home with his family with a shotgun. Defendant told the crowd he

 was armed and to leave his yard. Defendant testified the television was on and the

 room was lit. No evidence shows Defendant had “concealed himself in his darkened

 garage.” Even if true, neither has any relevance to Defendant’s claim of and

 entitlement to proper instructions on self-defense, defense of others, and habitation.

 Defendant’s conviction is preserved error, prejudicial, and must be vacated.

 III. Conclusion

¶ 61 Defendant’s challenge to the trial court’s instruction on lying in wait was

 expressly preserved. The trial court’s decision to submit lying in wait as a basis to

 support a conviction of first-degree murder while Defendant was wholly inside his

 home with his family as an armed intruder was approaching their home is erroneous.

 The jury instructions the trial court provided were prejudicial to vacate the lying in

 wait to support his conviction of first-degree murder. The trial court’s judgment on

 that ground is error, is prejudicial to Defendant, and is properly vacated. Nothing

 precludes or prejudices Defendant’s rights to seek an ineffective assistance of counsel
 STATE V. COPLEY

 2021-NCCOA-68

 TYSON, J., dissenting

claim for his trial counsel’s requests and active participation in the formulation of the

jury instructions regarding premeditation and deliberation and defenses thereto

during the charge conference, and counsel’s failure to preserve any such prejudicial

error for appellate review. I respectfully dissent.