IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-68

No. COA18-895-2

Filed 16 March 2021

Wake County, No. 16 CRS 215839

STATE OF NORTH CAROLINA

v.

CHAD CAMERON COPLEY

Appeal by defendant from judgment entered 23 February 2018 by Judge Michael J. O'Foghludha in Wake County Superior Court. Originally heard in the Court of Appeals 13 February 2019, and opinion filed 7 May 2019 reversing and remanding for new trial, *State v. Copley*, 265 N.C. App. 254, 828 S.E.2d 35 (2019). Reversed and remanded to the Court of Appeals by opinion of the North Carolina Supreme Court filed 3 April 2020, 374 N.C. 224, 839 S.E.2d 726 (2020), for consideration of defendant's remaining arguments on appeal.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*
>
> *Massengale & Ozer, by Marilyn G. Ozer, for defendant.*

ARROWOOD, Judge.

I.    <u>Appellate History</u>

On appeal, this Court, over a dissent, vacated defendant's convictions and remanded for retrial by reason that the State inappropriately discussed the race of defendant and the victim in his closing argument. *State v. Copley*, 265 N.C. App. 254, 257, 828 S.E.2d 35, 37-38 (2019). The Court did not reach defendant's remaining issues on appeal. Based upon the dissent, *id.* at 269-79, 828 S.E.2d at 45-50 (Arrowood, J., dissenting), the State appealed to the Supreme Court of North Carolina. Finding no prejudicial error in the prosecutor's closing argument with respect to race, our Supreme Court reversed and remanded for this Court to consider defendant's remaining arguments. *State v. Copley*, 374 N.C. 224, 232, 839 S.E.2d 726, 731 (2020). Upon consideration of defendant's remaining arguments on remand, we find defendant received a fair trial free from error.

## II.   Background

On 22 August 2016, a Wake County Grand Jury indicted defendant on one count of first-degree murder. The matter came on for trial on 12 February 2018 in Wake County Superior Court, the Honorable Michael J. O'Foghludha presiding. The State's evidence tended to show the following.

On 6 August 2016, Jalen Lewis ("Mr. Lewis") hosted a party at his parents' home, two or three houses down from defendant's house. Three of his guests, Kourey Thomas ("Mr. Thomas" or "victim"), David Walker ("Mr. Walker"), and Chris Malone ("Mr. Malone") arrived at the party in Mr. Walker's car around midnight, and parked

on the street. As the party progressed, a group of approximately twenty people showed up that Mr. Lewis and his friends did not know. After about ten minutes, the group was asked to leave. The group agreed, and walked towards their cars, congregating near the curb in front of defendant's house to discuss where to go next.

¶ 4 Defendant, who was inside his home, became disturbed by the group's noise. He yelled out an upstairs window, "[y]ou guys keep it the f*** down; I'm trying to sleep in here." He then called 911, telling the operator he was "locked and loaded" and going to secure the neighborhood. Defendant also stated, "I'm going to kill him." The operator attempted to obtain more information from defendant, but the phone call was terminated.

¶ 5 Meanwhile, a law enforcement officer conducted a traffic stop nearby, causing the lights of his police cruiser to reflect down the street. Mr. Thomas, Mr. Walker, and Mr. Malone saw the lights and became worried about the presence of law enforcement because Mr. Thomas had a marijuana grinder on his person.

¶ 6 The three men decided to leave the party due to the police presence. Mr. Thomas left the party first. He ran from Mr. Lewis' house, cutting across the yard, towards Mr. Walker's car. Before he could reach the car, he was shot by defendant, who fired without warning, from his dark, closed garage. EMS arrived and took Mr. Thomas to the hospital, where he died as a result of the gunshot.

¶ 7 Deputy Barry Carroll of the Wake County Sheriff's Office ("Deputy Carroll"), one of the first investigators on the scene, approached defendant's house after observing broken glass in defendant's driveway and a broken window in the garage. He shined a light through a window, and saw defendant step through a door from the house into the garage. Deputy Carroll asked defendant if he had shot someone. Defendant admitted to shooting Mr. Thomas. Deputy Carroll requested defendant open the front door. Defendant complied and showed Deputy Carroll the shotgun he used to shoot the victim.

¶ 8 At the close of the State's evidence, defendant moved to dismiss the case. The trial court denied the motion. Defendant presented evidence tending to show as follows.

¶ 9 Defendant argued with his wife on the morning of 6 August 2016, and then spent the day drinking, sleeping, and "just hanging out in the garage." After going to sleep that evening, he woke and saw the group leaving Mr. Lewis' party. Irritated at the noise the group made, he yelled, "[y]ou guys keep it the f*** down; I'm trying to sleep in here" out the window. Members of the group yelled back, " 'Shut the f*** up; f*** you; go inside, white boy,' things of that nature." He saw "firearms in the crowd[,]" and two individuals "lifted their shirts up" to flash their weapons. He testified that he called 911 at his wife's request. When he called 911, he thought it was his son and his son's friends outside, and stated that the "him" he referred to

killing while on the call was his son. After ending the call with 911, he grabbed his shotgun and loaded five rounds.

¶ 10 When he discovered his son was not part of the group outside, he told his son to get a rifle and go upstairs for safety. He again yelled at the group outside, instructing them to leave the premises and informing them that he had a gun. Defendant claimed Mr. Thomas then began to walk towards defendant's house and to reach for a gun, so he shot him.

¶ 11 At the close of defendant's evidence, he renewed his motion to dismiss, which the trial court denied. On 22 February 2018, the jury found defendant guilty of first-degree murder by premeditation and deliberation and by lying in wait. The trial court sentenced defendant to life without parole. Defendant timely noted his appeal.

## III. Discussion

¶ 12 In his remaining arguments, defendant contends: (1) the trial court erred by allowing the State to make improper statements of law during its closing argument concerning the aggressor doctrine and defense of habitation; (2) the trial court plainly erred by instructing the jury that the defense of habitation was not available if defendant was the aggressor; and (3) the trial court erred by instructing the jury on the theory of first-degree murder by lying in wait. Addressing each in turn, we find no error.

### A. Closing Argument

¶ 13    Defendant first argues the trial court violated his constitutional rights when it failed to intervene when the State argued incorrect law concerning the aggressor doctrine of self-defense and defense of habitation in its closing argument. We disagree.

¶ 14    Because defendant failed to object on this basis at trial, we review the allegedly improper closing arguments for

> whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

¶ 15    First, defendant contends the State erred when it told the jury defendant could be found to be the aggressor if he left the second floor of his house and went downstairs to the garage because this argument is contrary to *State v. Kuhns*, 260 N.C. App. 281, 817 S.E.2d 828 (2018) and grossly prejudicial.

¶ 16    Defendant does not quote the language he refers to as egregious, and only provides a citation to a page in the transcript where the prosecutor discusses the aggressor doctrine. Upon review of the transcript, it is clear the references to the

aggressor by the prosecutor in this portion of the transcript arose in the context of

self-defense, *not the habitation defense*:

> And I'm going to talk more about some of the things that
> he told you later, but what I want to get to is this excused
> killing by *self-defense*, okay?
>
> . . . .
>
> He doesn't have to retreat from his home, but if you're
> upstairs and somebody makes a show of force at you, it's
> not retreating to stay upstairs.  It's, in fact, the opposite of
> that, right?  But if you take your loaded shotgun and go
> down to the garage and if you buy him at his word, which I
> don't know that you can, you are not retreating.  You are
> being aggressive.  You're continuing your aggressive
> nature in that case.

(Emphasis added).  Therefore, defendant's argument that the trial court erred by

failing to intervene when the State misstated the law on the *habitation defense* is

without merit.

¶ 17        Second, defendant argues the State incorrectly added exceptions to the

habitation defense that our statutes only permit as exceptions to self-defense.

Defendant maintains the State committed this error in the following portion of its

argument:

> You can consider the size, age, strength of defendant as
> compared to the victim. . . .  You've got somebody who's
> standing at this point in a yard and you've got somebody
> on a second floor window.  How much danger is he to him
> at that point?  Especially at that point, he's not even saying
> they're pointing a gun at him.  All they've done is this –

(indicating) – if you buy him at his word.

. . . .

Reputation for violence, if any, of the victim, you didn't hear that he was a violent guy. You didn't hear that he was a gangbanger. All you heard is that he was actually the opposite of that, right?

We disagree. As with defendant's first argument, this portion of the transcript refers to self-defense, not the habitation defense. Defendant's argument is without merit.

### B.     Instruction on Defense of Habitation

¶ 18    Next, defendant argues the trial court plainly erred by instructing the jury that the defense of habitation was not an available justification if defendant was the aggressor. Defendant alleges plain error because he did not object on this basis at trial. N.C.R. App. P. 10(a)(2), (a)(4) (2019). We decline to reach this assignment of error.

¶ 19    During the charge conference, the trial court stated that it would give N.C. Pattern Jury Instruction 308.80, defense of habitation. The trial court added it would include footnote four on aggression, which provides the defense is not available to one who provokes the use of force against himself, unless the person provoked responded with more serious force. Defense counsel did not object to the requested further instructions on the "aggressor" doctrine, but asked the trial court: "[I]f the jury is going to be given instruction on provocation, that they be informed on the law of

initial aggression which is intended and designed to calculate this inspiring a fight."

Defendant's request was honored by the trial court giving N.C. Pattern Jury

Instruction 206.10.

¶ 20     In *State v. White*, 349 N.C. 535, 508 S.E.2d 253 (1998), our Supreme Court

held:

> Counsel . . . did not object when given the opportunity either at the charge conference or after the charge had been given. In fact, defense counsel affirmatively approved the instructions during the charge conference. Where a defendant tells the trial court that he has no objection to an instruction, he will not be heard to complain on appeal.

*Id.* at 570, 508 S.E.2d at 275 (citing *State v. Wilkinson*, 344 N.C. 198, 213, 474 S.E.2d

375, 396 (1996)).

¶ 21     Defendant's trial counsel's requests and active participation in the formulation

of the instructions during the charge conference waives any right he would have to

have the instructions reviewed even under a plain error analysis. Thus, we decline

to reach this issue.

## C.     Lying in Wait

¶ 22     Finally, defendant argues the trial court committed reversible error by

instructing the jury on the theory of lying in wait because the evidence did not support

the instruction. We disagree.

¶ 23     "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). "Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted). However, if "a request for instructions is correct in law and supported by the evidence in the case, the court must give the instruction in substance." *State v. Thompson*, 328 N.C. 477, 489, 402 S.E.2d 386, 392 (1991).

¶ 24     Our Supreme Court defines "first-degree murder perpetrated by means of lying in wait" as "a killing where the assassin has stationed himself or is lying in ambush for a private attack upon his victim." *State v. Leroux*, 326 N.C. 368, 375, 390 S.E.2d 314, 320 (1990) (citations and internal quotation marks omitted). The perpetrator must intentionally assault "the victim, proximately causing the victim's death." *State v. Grullon*, 240 N.C. App. 55, 60, 770 S.E.2d 379, 383 (2015) (citation and internal quotation marks omitted).

¶ 25     Defendant argues the evidence does not support an instruction on first-degree murder by lying in wait because the evidence did not show he laid in wait to shoot a victim, but, rather, it shows he armed himself to protect his house from intruders until police arrived to disperse the individuals gathered in front of his house. We disagree.

The State put forth sufficient evidence to support an instruction on lying in wait, even assuming *arguendo* that defendant offered evidence supporting his conflicting theory on defense of habitation. The State's evidence shows defendant concealed himself in his darkened garage with a shotgun, equipped with a suppression device. Defendant shot the victim, firing the shotgun through the garage's window. The shot bewildered bystanders because it was unclear what happened, and defendant had not warned the crowd before firing his weapon.

This evidence supports the lying in wait instruction because it tends to show defendant stationed himself, concealed and waiting, to shoot the victim, and this action proximately caused the victim's death. Accordingly, we hold the trial court did not err when it instructed the jury on murder by lying in wait.

## IV.  Conclusion

For the forgoing reasons, we find no error.

NO ERROR.

Judge STROUD concurs.

Judge TYSON dissents in a separate opinion.

No. COA18-895-2– *State v. Copley*

TYSON, Judge, dissenting.

¶ 29    Defendant was inside his home with his wife and children inside. He was alarmed after midnight by a rowdy and armed crowd which had gathered in front of his home. He raised his window to tell the crowd to quiet down and leave. Some of the crowd members responded by yelling profanity, racial slurs, and by displaying weapons. Defendant called 911 to report and request for law enforcement to disperse the crowd. A police officer was nearby with their vehicle's lights flashing. No officers responded immediately. Defendant armed himself with a shotgun and went downstairs to locate his son, who he believed may be outside the house. Defendant found his son in the converted garage that is part of the home. Defendant told his son to go upstairs for safety and to arm himself.

¶ 30    Defendant saw an individual in his yard coming toward his home armed with a gun. Defendant fired one shot from his shotgun through the window of his garage, striking the intruder.

¶ 31    When officers arrived and observed broken glass, he opened the door and admitted to firing the shotgun. Defendant gave the shotgun to the officers. Defendant never concealed himself, never left the interior of his home, other that shouting for the intruder to leave, had no prior interaction or altercation with the intruder, and expressed no animus toward the intruder. This evidence must be

viewed in the light most favorable to Defendant and for him to be given the benefit of every inference. Defendant objected to and specifically preserved this error of submitting the theory of lying in wait for the intruder to the jury, as a basis to convict him for first-degree murder under these facts.

¶ 32    Defendant was convicted of first-degree murder under two distinct theories of premeditation and deliberation and by lying in wait. The majority's opinion fails to follow North Carolina's statutory provisions and unbroken precedents to analyze Defendant's murder conviction for lying in wait. Defendant's conviction under lying in wait is erroneous, prejudicial, and is properly vacated. I respectfully dissent.

## I. Jury Instructions

¶ 33    During the charge conference, the following exchange took place between Defendant's counsel and the trial court:

> [DEFENSE COUNSEL]: Your Honor, just to clear up the record, I would say that it is very appreciative the work Your Honor has done in order to come up with that compromise, and that is not lost on us. For the record, we are objecting to the lying in wait instruction going to the jury. That's all I need to be heard about.
>
> THE COURT: Yes absolutely. And that's noted, and you-all know how to preserve it.

¶ 34    The majority's opinion states the prosecutor's references to the aggressor arose in the portion of transcript of self-defense; however, the cited portions of the transcript refer to "prevent a forcible entry into the defendant's home" and "he doesn't

have to retreat from his home." This artificial delineation ignores our Court's many precedents concerning the special status of an inhabitant within the curtilage of and inside his home. *See State v. McCombs*, 297 N.C. 151, 157, 253 S.E.2d 906, 910 (1979) (usual rules of common law self-defense apply inside the home, except that the occupant does not have a duty to retreat).

¶ 35        Our Supreme Court recently held where the trial court failed to provide a required instruction, the error "is preserved for appellate review without further request or objection." *State v. Lee*, 370 N.C. 671, 676, 811 S.E.2d 563, 567 (2018). In *Lee*, the trial court failed to give a requested pattern jury instruction on stand your ground, when the defendant had properly entered evidence to support the defense. *Id.* at 673, 811 S.E.2d at 565.

¶ 36        Our Supreme Court has held:

> [A] request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

*State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988) (citation omitted). Defendant's objection is persevered and is properly before us.

## II. Lying in Wait

## A. Preservation of Error

¶ 37        Defendant argues the trial court erred by instructing the jury on him lying in wait to commit first-degree murder. As noted above, Defense counsel properly preserved this issue for appellate review:

> [DEFENSE COUNSEL]: For the record, we are objecting to the lying in wait instruction going to the jury. That's all I need to be heard about.
>
> The COURT: Yes absolutely. And that's noted, and you-all know how to preserve it.

¶ 38        The undisputed evidence shows Defendant was located inside of his residence with his family after being alarmed by an armed and noisy crowd after midnight for the entire time during the events leading to the shooting:

> When [Defendant] discovered his son was inside the garage and not part of the group outside, he told his son to go upstairs for safety and to get a rifle. He again yelled at the group outside, instructing them to leave the premises and informing them that he was armed. Defendant claimed [the intruder] began running towards Defendant's house and pulled out a gun. Defendant fired one shot from his shotgun towards [the intruder] through the window of his garage.

*State v. Copley*, 265 N.C. App. 254, 257, 828 S.E.2d 35, 37-38 (2019), *rev'd and remanded*, 374 N.C. 224, 839 S.E.2d 726 (2020).

¶ 39        During the trial court's instruction for the theories of first-degree murder, the jury was instructed on lying in wait as follows:

> The [D]efendant has also been charged with first degree murder perpetrated while lying in wait. For you to find the

> defendant guilty of this offense, the State must prove three things beyond a reasonable doubt. First, that the defendant lay in wait for the victim; that is, waited and watched for the victim in ambush for a private attack on him. Second, that he intentionally assaulted the victim. And, third that the [D]efendant's act was a proximate cause of the victim's death.

¶ 40        The natural and common law since ancient times, and our State's statutes and

unbroken precedents, have recognized an individual's fundamental and absolute

right to protect and defend themselves, their family, and their home with deadly force

from individuals who are armed and violent.

> [T]here exists a law, not written down anywhere but inborn in our hearts; a law which comes to us not by training or custom or reading but by derivation and absorption and adoption from nature itself; a law which has come to us not from theory but from practice, not by instruction but by natural intuition. I refer to the law which lays it down that, if our lives are endangered by plots or violence or armed robbers or enemies, any and every method of protecting ourselves is morally right. When weapons reduce themselves to silence, the laws no longer expect one to await their pronouncements. For people who decide to wait for these will have to wait for justice too – and meanwhile they must suffer injustice first. Indeed, even the wisdom of the law itself, by a sort of tacit implication, permits self-defense, because it does not actually forbid men to kill; what it does, instead, is to forbid the bearing of a weapon with the intention to kill. When, therefore, an inquiry passes beyond the mere question of the weapon and starts to consider the motive, a man who has used arms in self-defense is not regarded as having carried them with a homicidal aim.

Marcus Tuillius Cicero, *Selected Political Speeches*, trans. Michael Grant (New York: Penguin, 1969), p. 222.

¶ 41 Our Supreme Court confirmed: "The principle that *one does not have to retreat regardless of the nature of the assault upon him when he is in his own home* and acting *in defense of himself, his family and his habitation* is firmly embedded in our law." *McCombs*, 297 N.C. at 156, 253 S.E.2d at 910 (emphasis supplied) (citations omitted); s*ee* N.C. Gen. Stat. § 14-51.2(b) (2019).

## B. *State v. Coley*

¶ 42 Our Supreme Court recently further examined and unanimously upheld a similar assertion of defense of one's habitation in *State v. Coley*, 375 N.C. 156, 159-60, 846 S.E.2d 455, 457-58 (2020):

> The jury charge is one of the most critical parts of a criminal trial. It is the duty of the trial court to instruct on all substantial features of a case raised by the evidence. This Court has consistently held that where competent evidence of self-defense is presented at trial, *the defendant is entitled to an instruction on this defense,* as it is a substantial and essential feature of the case, and *the trial judge must give the instruction even absent any specific request by the defendant.* When supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case. In determining whether a defendant has presented competent evidence sufficient *to support a self-defense instruction, we take the evidence as true and consider it in the light most favorable to the defendant.* Once a showing is made that the defendant has presented such competent evidence, *the court must charge* on this aspect even though there is

contradictory evidence by the State or discrepancies in defendant's evidence. *A defendant entitled to any self-defense instruction is entitled to a complete self-defense instruction,* which includes the relevant *stand-your-ground provision.*

*Id.* (emphasis original and supplied) (citations, alterations, and internal quotation marks omitted).

¶ 43 Defendant's proper and preserved objection to the submission of and the jury instruction on lying in wait shows the trial court erroneously failed to include the correlation and preemption of Defendant's common law and statutory rights to defense of self, family, and habitation to this submission and instruction. No evidence tends to show Defendant was lying in wait, luring, or secreting himself, other than remaining inside of his home under threats by an armed crowd. He repeatedly told them to leave and sought assistance from law enforcement. Defendant's evidence and the inferences therefrom must be submitted, instructed, and considered most favorably to him.

## C. Statutory Self-Defense, Defense of Others and Habitation

¶ 44 N.C. Gen. Stat. § 14-51.3(a) provides:

A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, *a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if <u>either of</u> the*

*following applies*:

> (1) He or she reasonably believes that such force is
> necessary to prevent imminent death or great
> bodily harm to himself or herself or another.
>
> (2) Under the circumstances permitted pursuant to
> G.S. 14-51.2.

N.C. Gen. Stat. § 14-51.3(a) (2019) (emphasis supplied).

¶ 45   When a defendant is inside his own home and under armed assault, N.C. Gen.

Stat. § 14-51.2 provides:

> (b) The lawful occupant of a home, motor vehicle, or
> workplace is presumed to have held a reasonable fear of
> imminent death or serious bodily harm to himself or herself
> or another when using defensive force that is intended or
> likely to cause death or serious bodily harm to another if
> both of the following apply:
>
>> (1) The person against whom the defensive force was
>> used was in the process of unlawfully and forcefully
>> entering, *or had unlawfully and forcibly entered, a
>> home*, motor vehicle, or workplace, or if that person
>> had removed or was attempting to remove another
>> against that person's will from the home, motor
>> vehicle, or workplace.
>
> The person who uses defensive force knew or had reason to
> believe that an unlawful and forcible entry or unlawful and
> forcible act was occurring or had occurred.
>
> (c) The presumption set forth in subsection (b) of this
> section shall be rebuttable and does not apply in any of the
> following circumstances:
>
>> (1) The person against whom the defensive force is
>> used has the right to be in or is a lawful resident of

the home, motor vehicle, or workplace, such as an owner or lessee, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person.

(2) The person sought to be removed from the home, motor vehicle, or workplace is a child or grandchild or is otherwise in the lawful custody or under the lawful guardianship of the person against whom the defensive force is used.

(3) The person who uses defensive force is engaged in, attempting to escape from, or using the home, motor vehicle, or workplace to further any criminal offense that involves the use or threat of physical force or violence against any individual.

(4) The person against whom the defensive force is used is a law enforcement officer or bail bondsman who enters or attempts to enter a home, motor vehicle, or workplace in the lawful performance of his or her official duties, and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person entering or attempting to enter was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.

(5) The person against whom the defensive force is used (i) has discontinued all efforts to unlawfully and forcefully enter the home, motor vehicle, or workplace and (ii) has exited the home, motor vehicle, or workplace.

(d) A person who unlawfully and by force enters or *attempts to enter a person's home*, motor vehicle, or workplace *is presumed to be doing so with the intent to commit an unlawful act involving force or violence.*

> (e) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force, unless the person against whom force was used is a law enforcement officer or bail bondsman who was lawfully acting in the performance of his or her official duties and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.
>
> (f) *A lawful occupant within his or her home*, motor vehicle, or workplace *does not have a duty to retreat* from an intruder in the circumstances described in this section.
>
> (g) This section is *not intended to repeal or limit any other defense* that may exist under the common law.

N.C. Gen. Stat. § 14-51.2 (2019) (emphasis supplied).

¶ 46    Our Supreme Court has also held: "Where there is evidence that defendant acted in self-defense, *the court must charge* on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) (emphasis supplied) (citations omitted).

## D. State's Assertion of Lying in Wait

¶ 47    To warrant an instruction and support a conviction for first-degree murder under the theory of lying in wait, precedents mandate the trial court instruct the jury that the State carries the burden to disprove Defendant's assertion of self-defense,

defense of others, and defense of his habitation. *See* N.C.P.I. - - Crim. 308.45A, 308.80

(2017). Also, the jury must be instructed that the evidence and inferences thereon

must be reviewed in the light most favorable to Defendant to determine whether

Defendant's defense of his self, home, or family did not fall under one of the exceptions

articulated in N.C. Gen. Stat. § 14-51.2(c).

¶ 48          Our Supreme Court further held in *Coley*:

> [p]resuming [that] a conflict in the evidence exists . . . it is
> to be resolved by the jury, *properly instructed*, it is
> appropriately within the purview of the jury to resolve any
> conflicts in the evidence presented at trial and to render
> verdicts upon being *properly instructed* by the trial court
> based upon the evidence which competently and
> sufficiently supported the submission of such instructions
> to the jury for collective consideration.

*Coley,* 375 N.C. at 163, 846 S.E.2d at 460 (alterations in original) (emphasis supplied)

(citations and internal quotation marks omitted).

¶ 49          In this case, as in *Coley*, the trial court improperly submitted and failed to

instruct the jury on this requirement despite Defendant's express requests and

preserved objections. Undisputed evidence shows Defendant was located inside of

his home with his family during the entire time and sequence of events, during which

he testified an armed intruder was running in his yard toward his home.

¶ 50          He called 911 to report the activities of and threats from a large belligerent

and armed group massed outside his home after midnight and to request law

enforcement to respond. After the 911 call, Defendant testified he left his bedroom and went downstairs to determine if his teenage son was outside. Defendant found his son was safe inside the home downstairs and sent him upstairs to greater safety. Any assertion that his prior words, behavior, or actions made him the aggressor while inside his own home is fallacious. Even if so, Defendant was entitled to proper jury instructions, which the trial court failed to provide to his prejudice. *Id.*

The majority's opinion asserts the State put forth sufficient evidence to support an instruction on lying in wait. What evidence? That Defendant was inside of his home and protecting his family with a shotgun, while facing an armed intruder after midnight with no response from his 911 call? The State was required to disprove Defendant's claims beyond a reasonable doubt of self-defense prior to the jury reaching Defendant's claims of lying in wait. N.C.P.I. - - Crim. 308.45A, 308.80 (2017). The critical error by the trial court is the lying in wait submission and instruction, even if supported by the State's evidence, is not independent of Defendant's rights to mandatory and complete instructions on his preemptive rights. Defendant clearly preserved his preeminent right to defend himself, his family, and their habitation against the actions of an armed intruder.

All the evidence and inferences thereon must be viewed in the light most favorable to Defendant by the jury properly instructed on the law and the State's burdens. *See Dooley*, 285 N.C. at 163, 203 S.E.2d at 818. "When determining whether

the evidence is sufficient to entitle a defendant to jury instructions on a defense. . . , courts must consider the evidence in the light most favorable to [the] defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citations omitted). Defendant carried no burden once competent evidence of self-defense, defense of others and habitation was admitted. A notion to rely solely upon the sufficiency of the State's evidence is erroneous and directly contrary to our binding precedents.

¶ 53        The trial court's failures denied Defendant of the most fundamental rights to protect and defend himself, his family, and their home. The majority's opinion lacks any analysis of the State's burdens, Defendant's preemptive rights, and the prejudice he has suffered in their denial.

¶ 54        In *State v. Bridges*, 178 N.C. 733, 738, 101 S.E.2d 29, 32 (1919), officers were lawfully serving an arrest warrant. The defendant secreted himself and waited outside and behind a corner to fire upon the officers. *Id.* at 739, 101 S.E.2d at 32 ("[A]nd you further find that the witness, . . . , after going to the house, intentionally and purposely pointed his pistol at the defendant Bridges, and that Bridges, under these circumstances, apprehended and had reasonable grounds to apprehend either that he was in danger of great bodily harm, or in danger of the loss of his life, you will then find that he had a legal right to use such force as was necessary, or apparently necessary, to repel the assault of . . . and protect himself, and the necessity of dong so was real or apparent . . ., viewing all the facts and circumstances as they reasonably

appeared to Bridges at the time the shot was fired."). Lying in wait "refers to a killing where the assassin has stationed himself or is lying in ambush for a private attack upon his victim." *State v. Allison*, 298 N.C. 135, 147, 257 S.E.2d 417, 425 (1979).

¶ 55        No testimony showed Defendant had any prior association, connection, or animus towards the neighbors across the street or to the armed and unruly crowd that gathered in front of his home and threatened him. After being startled by a threatening situation, with a massed, armed crowd at the edge of the yard, who displayed weapons and shouted racial epithets, Defendant called 911, retrieved his shotgun and walked downstairs to his garage to search for his teenage son.

¶ 56        The jury's instructions on lying in wait did not require the State to disprove nor require the jury to consider and rectify Defendant's rights to self-defense, defense of his family, and his habitation in the light most favorable to Defendant or to place the burden on the State to overcome Defendant's defenses and presumptions. *See id.* This preserved error of submitting lying in wait without proper instructions was prejudicial to Defendant as a basis to support his conviction.

## E. *State v. Stephens*

¶ 57        This Court, with two members of this panel, recently examined self-defense in *State v. Stephens*, __ N.C. App. __, __, 853 S.E.2d 488, 496 (2020). The jury was improperly instructed on an individual's right to self-defense. The jury in *Stephens* was not allowed to rectify the defendant's rights to self-defense when there was a

dispute over whether he was the first aggressor. *Id.* at __, 488 S.E.2d at 492. The defendant, in *Stephens*, lawfully carried a weapon as he entered someone's property, whose owners had released a dog that had killed his child's pet. *Id.* Defendant put on facts, which viewed in the light most favorable to him, asserted the property owner illegally retrieved a weapon and repeatedly fired that weapon at him, hitting him and his clothing. *Id.*

¶ 58        Here, the State asserted Defendant had acted with aggression by arming himself inside his own home with his family present in the face of armed threats outside. This notion is contrary to our unbroken binding precedent. Our State has long held a defendant who armed himself in anticipation of a fight, and failed to avoid the fight, was not the aggressor. *State v. Tann*, 57 N.C. App. 527, 531, 291 S.E.2d 824, 827 (1982).

¶ 59        To support a murder conviction under the theory of lying in wait, the jury must be instructed, find, and conclude the evidence, when viewed in the light most favorable to Defendant, fell under one of the exceptions articulated in N.C. Gen. Stat. § 14-51.2 (c). However, despite Defendant's preserved request and objection, and trial court's clear and express duty to instruct on all the evidence and the State's burden, the trial court failed to instruct the jury on these requirements. The jury was instructed over Defendant's express objections on a theory that did not allow them to consider the evidence in the light most favorable to Defendant.

¶ 60      The jury failed to rectify Defendant's presumptive rights to self-defense, defense of others, and defense of his habitation under N.C. Gen. Stat. §§ 14-51.3(a) and 14-51.2 while he was located inside of his home with his family from beginning to end. No evidence tends to show Defendant hid, lured the intruder, set a trap, nor did anything to support a conviction under a theory of lying in wait, while he was within his own home with his family with a shotgun. Defendant told the crowd he was armed and to leave his yard. Defendant testified the television was on and the room was lit. No evidence shows Defendant had "concealed himself in his darkened garage." Even if true, neither has any relevance to Defendant's claim of and entitlement to proper instructions on self-defense, defense of others, and habitation. Defendant's conviction is preserved error, prejudicial, and must be vacated.

### III. Conclusion

¶ 61      Defendant's challenge to the trial court's instruction on lying in wait was expressly preserved. The trial court's decision to submit lying in wait as a basis to support a conviction of first-degree murder while Defendant was wholly inside his home with his family as an armed intruder was approaching their home is erroneous. The jury instructions the trial court provided were prejudicial to vacate the lying in wait to support his conviction of first-degree murder. The trial court's judgment on that ground is error, is prejudicial to Defendant, and is properly vacated. Nothing precludes or prejudices Defendant's rights to seek an ineffective assistance of counsel

claim for his trial counsel's requests and active participation in the formulation of the jury instructions regarding premeditation and deliberation and defenses thereto during the charge conference, and counsel's failure to preserve any such prejudicial error for appellate review. I respectfully dissent.