IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-885

Filed 17 December 2024

Lincoln County, Nos. 18 CRS 53032, 20 CRS 416

STATE OF NORTH CAROLINA

v.

JASON JOHN CARWILE

Appeal by Defendant from Judgments entered 22 February 2023 by Judge W. Todd Pomeroy in Lincoln County Superior Court. Heard in the Court of Appeals 27 August 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden W. Hayes, for the State.*

*Christopher J. Heaney for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Jason John Carwile (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of Second-Degree Murder, Misdemeanor Assault, and Misdemeanor Communicating Threats. **[R p 1]** The Record before us, including evidence presented at trial, tends to reflect the following:

Around 5:00 a.m. on 4 September 2018, the decedent in this case—Christopher Easter—approached Defendant's residence wearing a mask. **[T2 p 199, 277, 288]**

Defendant, his wife, and Joshua Chinault were all present at the house. Easter grabbed a chainsaw that was on the porch, entered the house, and struck Defendant with the chainsaw. **[Id.]** Easter also hit Defendant in the head with a rock-stuffed sock. **[T p 579]** Defendant pushed Easter out of the house through the front door, and an altercation between the two ensued. **[T p 586]** Defendant and Easter continued to fight while moving away from the house and towards a used car dealership lot approximately five hundred yards away. **[Id.]** As they entered the neighbor's yard, Easter slipped and dropped the chainsaw. **[T p 222-23]** Defendant also fell around this point, but Easter continued "backing" away from the house. **[T p 228-29, 361-62, 586]**

Surveillance footage from the auto dealership—admitted into evidence—showed Easter, with his hands raised, backing into the car lot. **[T p 228-29; SE 5 00:24-28]** Approximately five seconds later, Defendant approached Easter as he backed into one of the cars and "holler[ed], 'Where you going boy? I'm going to kill you[.]'" **[T p 363, 598]** Easter was still backing away when Defendant's wife entered the scene carrying a white trash can. **[SE 5 00:30-32]** Defendant's wife hit Easter with the trash can as Easter kept backing up. Defendant and his wife continued to approach Easter until he backed into another car. Defendant and his wife both hit Easter, causing him to fall to the ground. **[SE 5 00:39-40]** As Easter tried to get back up, Defendant hit him in the head with a rock-filled sock. **[SE 6 00:40-42]** Defendant repeatedly hit Easter with the rock-filled sock. During the beating, a wrench fell from

Easter's clothes; Defendant picked up the wrench and hit Easter in the head with it. **[SE 6 00:45-49]** Easter wrapped around Defendant's knees, causing him to fall to the ground. **[SE 6 00:51-53]**

Around this time, Chinault arrived. **[SE 6 00:53]** Defendant continued to strike Easter with the wrench while both were on the ground. While Defendant was hitting Easter with the wrench, Defendant's wife and Chinault started kicking and striking Easter as well. **[SE 6 01:00]** Defendant also began slamming Easter's head into the concrete. All three kept attacking Easter while he lay on the ground unmoving for over a minute. **[SE 6 01:15-02:30]** Defendant, while slamming Easter's head into the ground, dragged and pulled him over to a parked car. **[SE 5 02:13-20]** While Easter lay motionless in the road, Defendant continued to beat him. At this point, both Defendant's wife and Chinault attempted to "get [Defendant] to stop." **[T6 p 622-23]** But he did not. **[SE 6 02:30-3:50]** Defendant's wife pulled Easter's shoes and pants off of him and left them in the road. **[SE 6 03:15-20; SE 5 03:20]** Eventually, Defendant's wife pulled him off of Easter. **[SE 6 03:50]** Defendant, his wife, and Chinault then went back to the house, leaving Easter on the ground. **[SE 5 4:37]** Easter died as a result of his injuries.

On 13 July 2020, Defendant was indicted for First-Degree Murder, Felony Assault with a Deadly Weapon with Racial Motivation, and Felony Communicating Threats with Racial Motivation. **[R p 4]** This case came on for trial on 13 February 2023. **[T p 1]** In his defense, Defendant asserted self-defense and defense of others.

**[R p 17]** During the preliminary charge conference, the trial court expressly asked Defendant's counsel about the self-defense issue in the following exchange:

> [Trial Court]: [A]re you looking at self-defense and then the motive, the stand your ground, like defense of habitation or . . .
>
> [Defense Counsel]: No, because that clearly says it does not apply.
>
> [Trial Court]: Right.
>
> [Defense Counsel]: This is more of a — It's a hybrid, but I think it's accurate under the law, Your Honor. This is one [of] those strange cases where I think it's pretty clear, just like [the prosecutor] said, that if he'd shot him dead in the house, everything would have been fine.
>
> [Trial Court]: Right.
>
> [Defense Counsel]: Unfortunately, he managed to run away. But that's the reason you don't get to use physical force while doing that. There is no home base here. **[T5 p 524]**

After the defense rested, Defendant proposed a special instruction stating that "the State must prove that but for the alleged victim escaping after the commission of the felony of felonious breaking or entering . . . the confrontation resulting in . . . the death of the victim would not have occurred." **[Supp at 1]** The trial court rejected this instruction.

On 22 February 2023, the jury returned verdicts finding Defendant guilty of Second-Degree Murder, Misdemeanor Assault with a Deadly Weapon, and Misdemeanor Communicating Threats. **[R p 70-72]** The trial court sentenced Defendant to 300 to 372 months of imprisonment for Second-Degree Murder. **[R p**

75-76] The trial court consolidated the convictions for Assault with a Deadly Weapon and Communicating Threats, and sentenced to 30 days of imprisonment to run concurrently with the sentence for Second-Degree Murder. **[R p 77-78]** Defendant orally gave Notice of Appeal on 22 February 2023. **[T8 p 853]**

## Issues

The dispositive issues on appeal are whether the trial court: (I) plainly erred in failing to give the jury an instruction on the defense of habitation—known as the Castle Doctrine—where Defendant used deadly force against Easter in a parking lot after Easter retreated from Defendant's residence; and (II) erred by refusing to give Defendant's requested special jury instruction.

## Analysis

I.  Applicability of the Castle Doctrine

On appeal, Defendant contends the trial court plainly erred by failing to instruct the jury on the Castle Doctrine. Specifically, Defendant argues the trial court should have instructed the jury: (a) his fear for his life was presumptively reasonable; (b) an aggressor instruction clarifying that a person is "not the aggressor while defending their home"; and (c) he was allowed to threaten Easter with lawful force. He also argues his trial counsel's failure to request these instructions constituted ineffective assistance of counsel.

For each of the jury instructions at issue here, Defendant failed to object at trial to their omission. He is, therefore, limited to arguing their omission constituted

plain error. N.C.R. App. P. 10(a)(4) (2023) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule of law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). Further, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)). Thus, plain error is reserved for "the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial . . . that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused[.]' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original). In other words, plain error requires a defendant to meet a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional

case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024).

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Kuhns*, 260 N.C. App. 281, 284, 817 S.E.2d 828, 830 (2018) (citation omitted). "[I]t is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *Id.* (citation omitted). Conversely, a trial court does not err by omitting an instruction where there is not substantial evidence presented at trial that the defendant is entitled to such an instruction. *See, e.g. State v. Dilworth*, 274 N.C. App. 57, 64, 851 S.E.2d 406, 411 (2020) (trial court did not err in omitting defense of habitation instruction where there was no evidence victim was attempting to unlawfully enter home); *State v. Copley,* 386 N.C. 111, 125, 900 S.E.2d 904, 915 (2024) (finding no prejudicial error in jury instructions where "jurors concluded that the castle doctrine did not shield" the defendant from criminal liability).

A.      *Castle Doctrine and Presumption of Reasonable Fear*

"North Carolina has long recognized that '[a] man's house, however humble, is his castle, and in his castle he is entitled to protect against invasion.' " *State v. Kuhns*, 260 N.C. App. at 284, 817 S.E.2d at 830 (quoting *State v. Gray*, 162 N.C. 608, 613, 77 S.E. 833, 835 (1913)). As our Supreme Court has recently affirmed, "an attack on the

house or its inmates may be resisted by taking life." *State v. Phillips*, No. 281A231, slip op. at 3 (N.C. Aug. 23, 2024) (quoting *Gray*, 162 N.C. at 613, 77 S.E. at 835). "This fundamental principle of defense of habitation is known as the castle doctrine." *Id.* The defense of habitation is codified in our statutes as follows:

> The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcible entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
>
> (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

N.C. Gen. Stat. § 14-51.2(b) (2023).

Here, Defendant contends the trial court plainly erred by failing to instruct the jury that Defendant's fear for his life was presumptively reasonable under the circumstances. **[App Br 14]** When the Castle Doctrine applies, a person has a presumptively reasonable fear of imminent death or serious bodily harm when another seeks to unlawfully and forcefully enter that person's home while he is present. This presumption, however, does not apply in any of the statutory conditions listed in subsection (c) of N.C. Gen. Stat. § 14-51.2. *Phillips*, slip op. at 15. Relevant

- 8 -

to the present case, our statutes provide the Castle Doctrine presumption does not apply where "[t]he person against whom the defensive force is used (i) has discontinued all efforts to unlawfully and forcefully enter the home, motor vehicle, or workplace, and (ii) has exited the home, motor vehicle, or workplace." N.C. Gen. Stat. § 14-51.2(c)(5) (2023). In determining whether a defendant is entitled to an instruction on the Castle Doctrine, a court must view the evidence "in the light most favorable to the defendant, and the determination shall be based on evidence offered by the defendant and the State." *State v. Cook*, 254 N.C. App. 150, 152, 802 S.E.2d 575, 577 (2017) (citations omitted).

There is no dispute that at the time Defendant used deadly force against Easter, Easter had exited Defendant's home. Video surveillance footage shows Defendant used deadly force against Easter in a used car parking lot five hundred yards away from Defendant's home. The question, then, is whether Easter had "discontinued all efforts to unlawfully and forcefully enter the home[.]" N.C. Gen. Stat. § 14-51.2(c)(5) (2023). Viewing the evidence in the light most favorable to Defendant, we conclude that he had and, consequently, that the Castle Doctrine does not apply to the present case.

While much of the caselaw addressing whether an intruder had discontinued their efforts to forcefully enter a home is unpublished and, thus, not controlling legal

authority,[1] we find *State v. Willoughby* persuasive in our assessment of the facts at bar. In *State v. Willoughby*, the defendant was convicted of second-degree murder after shooting a woman standing in his yard who was in the midst of a dispute with another occupant through a window. 292 N.C. App. 220, 896 S.E.2d 317 (2024) (unpublished). There, viewing the evidence in the light most favorable to the defendant, this Court concluded the Castle Doctrine did not apply and thus, the trial court did not err by declining to instruct the jury on the Castle Doctrine. *Id.* at *2. In support of its conclusion, this Court noted several facts. First, an eyewitness to the shooting testified at trial that the victim "was standing in the front yard and was not coming toward [d]efendant before [d]efendant shot at her from his front porch." *Id.* Further, the defendant acknowledged to law enforcement officers that the victim "was not acting in a threatening manner". *Id.* Indeed, "the evidence showed that [the victim] stood approximately 38 feet away and exclaimed, 'Oh, well, you're going to . . . shoot me,' a sentiment she reiterated, in shock, after [d]efendant then shot her." *Id.* Additionally, the Court pointed to evidence the defendant was calm when officers arrived at the scene and that the defendant repeatedly told law enforcement he had not intended to shoot the victim, but rather he was aiming at a brick pile in the front yard. *Id.*

---

[1] Our Rules of Appellate Procedure provide: "An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority. Accordingly, citation of unpublished opinions in briefs, memoranda, and oral arguments in the trial and appellate divisions is disfavored[.]" N.C.R. App. P. 30(e)(3) (2024).

Viewing the evidence in the light most favorable to Defendant in the present case, like the victim in *Willoughby*, Easter was not moving toward Defendant or Defendant's home at the time Defendant used deadly force. Indeed, eyewitnesses—notably Defendant's wife and his friend Chinault—testified Easter was moving away from Defendant's home and was backed up against a car in a used car dealership lot hundreds of yards away. Further, the video surveillance footage shows a period of time when there was distance between Easter and Defendant. Similarly to the victim in *Willoughby,* in that time, Easter did not move toward Defendant or Defendant's home; rather, he stood still, backed against a car some five hundred yards from Defendant's home.

Although Defendant testified that the altercation with Easter "continued from [his] residence to the parking lot" and claimed Easter never "turn[ed] and r[a]n away," Defendant also testified that he fell just before reaching the parking lot and thus may not have seen Easter run. **[T p 582-83]** Further, Defendant conceded on cross-examination that Easter "back[ed] away" at various points, consistent with Defendant's wife's and neighbor's testimony. Indeed, Chinault testified that as Easter backed against one of the cars, Defendant yelled "Where you going, boy? I'm going to kill you[.]" **[T3 p 363]** Additionally, the video surveillance footage clearly shows at least a full minute where Easter lay motionless on the ground while Defendant repeatedly slams his head against the concrete and Defendant's wife and Chinault kick and strike him. **[SE 6 02:13-3:50]** Based on this evidence, even viewed

in the light most favorable to Defendant, we conclude Easter had "discontinued all efforts to unlawfully and forcefully enter the home" and thus, the Castle Doctrine did not apply. N.C. Gen. Stat. § 14-51.2(c)(5) (2023). Therefore, Defendant was not entitled to a jury instruction that his fear was presumptively reasonable.

B.   *Aggressor Instruction*

Defendant next contends the trial court plainly erred in failing to provide a jury instruction clarifying that a person is "not the aggressor while defending their home." **[App. Br. 26]** Because Defendant was not entitled to an instruction on the Castle Doctrine, we conclude he was therefore not entitled to this aggressor instruction.

The defenses available to defendants pursuant to N.C. Gen. Stat. §§ 14-51.2 and 14-51.3 "[are] not available to" someone who "[i]nitially provokes the use of force against himself or herself." N.C.G.S. § 14-51.4 (2021). This is commonly known as the aggressor doctrine. "Someone may be considered the aggressor if they 'aggressively and willingly enter[ ] into a fight without legal excuse or provocation.' " *State v. Hicks,* 385 N.C. 52, 60, 891 S.E.2d 235, 241 (2023) (citing *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135 (1971)). Someone "who did not instigate a fight may still be the aggressor if they continue to pursue a fight that the other person is trying to leave." *Id.* (citations omitted). "When the evidence is conflicting, it is for the jury to determine whether the defendant was the aggressor." *Id.* (citations omitted).

Here, the evidence shows Defendant became the aggressor when Defendant

continued to pursue Easter after Easter discontinued his efforts to unlawfully and forcefully enter the home and tried to leave. Indeed, the video surveillance footage shows Defendant calling after Easter stating, "Where are you going boy? I'm going to kill you." Easter was also moving away from Defendant's home while Defendant, Defendant's wife, and Chinault followed. When Defendant reached Easter, he beat Easter with a sock filled with rocks and a wrench, taking turns with his wife and Chinault in delivering the blows. Defendant did not stop beating Easter when he was laying motionless on the ground; the assault continued well after Easter ceased resistance. Thus, we conclude Defendant "continue[d] to pursue a fight" that Easter was "trying to leave." *Hicks*, 385 N.C. at 60, 891 S.E.2d at 241. Therefore, Defendant was not entitled to a clarification regarding when he could not be deemed the aggressor. Consequently, we conclude the trial court did not plainly err in omitting this instruction.

### C. *Communicating Threats*

Defendant additionally contends the trial court plainly erred in failing to instruct the jury that Defendant had lawful authority to communicate threats to an intruder while he was defending his home. Again, Defendant did not request any such instruction at trial.

The offense of communicating threats is defined as follows:

> A person is guilty of a Class 1 misdemeanor if without lawful authority:

(1) He willfully threatens to physically injure the person or that person's child, sibling, spouse, or dependent or willfully threatens to damage the property of another;

(2) The threat is communicated to the other person, orally, in writing, or by any other means;

(3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and

(4) The person threatened believes that the threat will be carried out.

N.C. Gen. Stat. § 14-277.1(a) (2023). Defendant concedes the four enumerated elements for communicating threats are met. However, Defendant argues that when he communicated threats to Easter, he had the lawful authority to do so because he was acting in self-defense or defense of habitation pursuant to the Castle Doctrine. In other words, Defendant contends "[t]he trial court should have told the jurors that if [Defendant] was threatening to use lawful force, then he could not communicate threats." **[Defendant's Br. 30]** We disagree.

As discussed above, Defendant was not entitled to use deadly force pursuant to the Castle Doctrine because Easter had exited Defendant's home and "discontinued all efforts to unlawfully and forcefully enter the home." N.C. Gen. Stat. § 14-51.2(c)(5) (2023). Thus, Defendant's contention that if deadly force is justified, so too is communicating threats fails because Defendant's use of deadly force was *not* justified.

Further, even if the Castle Doctrine applied, the trial court substantively provided the instruction Defendant now argues for at trial. A trial court is not

required to follow any strict format when instructing the jury "as long as the instruction adequately explains each essential element of the offense." *State v. Guice*, 286 N.C. App. 106, 113, 879 S.E.2d 350, 355 (2022) (citing *State v. Walston*, 367 N.C. 721, 731, 766 S.E.2d 312, 319 (2014)). Where a defendant requests additional language be added to a jury instruction that is redundant, the trial court does not err in failing to add the requested language, even if it is a correct statement of law. *See id.* (where a trial court instructed the jury the phrase "willfully threaten" means "intentionally or knowingly expressing an intent or a determination to physically injure another person," a requested instruction as to the subjective intent of the defendant was redundant and thus it was not error for the trial court to refuse to give the instruction).

Regarding the charge of Communicating Threats, the jury was instructed as follows:

> For you to find the defendant guilty of this offense, the State must prove six things beyond a reasonable doubt: First, that the defendant willfully threatened to physically injure the victim. A threat is any expression of an intent or determination to physically injure another. A threat is made willfully if it is made intentionally or knowingly. Second, that the threat was communicated to the victim orally. Third, that the threat was made in a manner and under circumstances which would cause a reasonable person to believe that it was likely to be carried out. Fourth, that the victim believed the threat would be carried out. *Fifth, that the threat was made without lawful authority.* Sixth, that the offense was committed because of the victim's race or color. . . . If you do not so find or have a reasonable doubt as to one or more of these things, you would then determine if the defendant is guilty of misdemeanor communicating threats.

> Misdemeanor communicating threats differs in that the offense need not be committed because of the victim's race or color. (emphasis added).

Thus, the jury was in fact instructed that the State had to prove Defendant had communicated threats without lawful authority. We, therefore, conclude there was no error in the trial court's instruction on communicating threats.

D.    *Ineffective Assistance of Counsel*

Defendant also argues his trial counsel's failure to request the above jury instructions constituted ineffective assistance of counsel (IAC). Because the Castle Doctrine does not apply in this case, we conclude Defendant's counsel was not ineffective in failing to request said instructions.

Defendant raises his IAC claim for the first time on appeal. "In general, claims of ineffective assistance of counsel should be considered through motion for appropriate relief and not on direct appeal." *State v. Warren*, 244 N.C. App. 134, 144, 780 S.E.2d 835, 841 (2015) (citation and internal quotation marks omitted). IAC claims brought on direct review will be decided on the merits, however, "when the cold record reveals that no further investigation is required[.]" *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001). On direct appeal, this Court "limits its review to material included in the record on appeal and the verbatim transcript of the proceedings[.]" *Id.* at 166, 557 S.E.2d at 524–25 (citation omitted).

Under *Strickland v. Washington*, a defendant must satisfy a two-part test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. 668, 687, 104 S. Ct. 2025, 2064, 80 L. Ed. 2d 674, 693 (1984). To demonstrate prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. "[T]here is no reason for a court deciding an ineffective assistance of counsel claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S. Ct. at 2069, 80 L. Ed. 2d at 699. "A successful ineffective assistance of counsel claim based on a failure to request a jury instruction requires the defendant to prove that without the requested jury instruction there was plain error in the charge." *State v. Pratt*, 161 N.C. App. 161, 165, 587 S.E.2d 437, 440 (2003) (citing *State v. Swann*, 322 N.C. 666, 688, 370 S.E.2d 533, 545 (1988)).

The evidence presented at trial shows the Castle Doctrine does not apply in this case because Easter had exited Defendant's home and discontinued his efforts to enter the home. Thus, the trial court did not err in failing to give jury instructions on the Castle Doctrine. As such, defense counsel's failure to request these jury instructions does not amount to plain error. Therefore, Defendant's claim of ineffective assistance of counsel fails. *Pratt*, 161 N.C. App. at 165, 587 S.E.2d at 440.

II.    Defendant's Special Instruction

Defendant contends the trial court's refusal to give a special instruction was in error.  At trial, Defendant requested the following instruction:

> The alleged victim would not be justified, and is therefore not entitled to the benefit of using defensive force, if he was escaping after the commission of the felony of felonious breaking or entering . . . and that felony offense was immediately and causally connected to the circumstances giving rise to the defensive force used by the alleged victim.  As such, for the alleged victim to be allowed the benefit of using defensive force, the State must prove beyond a reasonable doubt, among other things, that the alleged victim, while using defensive force, was not escaping after the commission of the felony of felonious breaking or entering . . . and there was not an immediate causal connection between the alleged victim's use of such defensive force and his felonious conduct.  In other words, the State must prove that but for the alleged victim escaping after the commission of the felony of felonious breaking or entering . . . the confrontation resulting in . . . the death of the victim would not have occurred. **[T6 p 688-89]**

The trial court declined to give this instruction, finding it unsupported by legal authority. **[T6 p 688-89]** We agree.

"It is a well-established principle in this jurisdiction that in reviewing jury instructions for error, they must be considered and reviewed in their entirety." *Murrow v. Daniels*, 321 N.C. 494, 497, 364 S.E.2d 392, 395 (1988) (citations omitted).  "A specific jury instruction should be given when (1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Outlaw v.*

*Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (citations and quotations marks omitted). Additionally, "[i]t is well established in this jurisdiction that the trial court is not required to give a requested instruction in the exact language of the request." *State v. Green*, 305 N.C. 463, 476-77, 290 S.E.2d 625, 633 (1982). A trial court need not give an instruction verbatim so long as it gives the instruction in substance. *State v. Godwin*, 369 N.C. 604, 613, 800 S.E.2d 47, 53 (2017).

"A request for a special instruction which deviates from the pattern jury instruction qualifies as a special instruction." *State v. Young,* 903 S.E.2d 460 (N.C. App. 2024) (citing *State v. Brichikov*, 281 N.C. App. 408, 414, 869 S.E.2d 339, 344 (2022)). "If a request [is] made for a special instruction, which is correct in itself and supported by evidence, the court must give the instruction at least in substance." *State v. Lamb*, 321 N.C. 633, 644, 365 S.E.2d 600, 605–06 (1988) (citing State v. Hooker, 243 N.C. 429, 431, 90 S.E.2d 690, 691 (1956)). A trial court's erroneous refusal to instruct the jury in accordance with a criminal defendant's request will not result in a reversal of the trial court's judgment unless the error in question has prejudiced the defendant, with such prejudice having occurred in the event that the defendant shows that there is a 'reasonable possibility that, had the trial court given the [requested instruction], a different result would have been reached at trial. *State v. Benner*, 380 N.C. 621, 628-29, 869 S.E.2d 199, 204-05 (2022) (quoting *Lee*, 370 N.C. at 672, 811 S.E.2d at 564).

Defendant contends *State v. McLymore* provides the legal basis for his

requested special instruction. 380 N.C. 185, 868 S.E.2d 67 (2022). In *McLymore*, the defendant was charged with first-degree murder, among other charges, after he got into an altercation with the decedent and shot him. *Id.* at 188, 868 S.E.2d at 70–71. At the time of the shooting, the defendant was a felon in possession of a firearm. *Id.* At trial, the defendant sought to assert the affirmative defense of self-defense. *Id.* North Carolina General Statute § 14-51.4(1) provides that self-defense is not available to "a person who used defensive force and who was attempting to commit, committing, or escaping after the commission of a felony." *Id.* at 186–87, 868 S.E.2d at 70 (citing N.C. Gen. Stat. § 14-51.4(1)). The North Carolina Supreme Court concluded that because the defendant was committing the felony of being a felon in possession of a firearm at the time he shot the decedent, and the two activities shared a "causal nexus," he could not assert the defense of self-defense under N.C. Gen. Stat. § 14-51.4(1). *Id.* at 200, 868 S.E.2d at 78.

*McLymore*'s holding is narrower than Defendant contends. *McLymore* addressed whether a criminal defendant could assert the defense of self-defense where the defendant had been in the process of committing a felony. Defendant wishes to extend this principle to the conduct of Easter, arguing that Easter used impermissible force against Defendant because he was in the process of fleeing a felony when he fled Defendant's home. Easter, however, is not a criminal defendant and is not asserting self-defense as an affirmative defense for his conduct. Thus, *McLymore* does not apply to Easter's conduct. Because the Defendant's requested

- 20 -

instruction, as written, is not supported by legal authority, the trial court did not err in declining to provide it to the jury.

Moreover, to the extent the requested jury instruction pertains to Defendant, the instruction was substantively given. Defendant's requested instruction informs the jury that Easter's use of force was unlawful, thus entitling Defendant to defend himself. The requested instruction, in substance, thus asks the jury to be instructed on self-defense. The jury received such an instruction. Indeed, at trial, the following instruction was provided to the jury regarding Defendant's right to defend himself:

> If the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect that person from imminent death or great bodily harm and the circumstances did create sufficient belief in the defendant's mind at the time the defendant acted, such assault would be justified by self-defense. You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at that time. **[R p 52]**

The provided instruction is an accurate statement of the law regarding self-defense. Thus, even were Defendant entitled to the requested instruction, it was substantively given. Therefore, the trial court did not err in declining to give Defendant's requested instruction. Consequently, the trial court did not err in its jury instructions. In turn, the trial court did not err in entering judgment upon the jury verdicts.

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error in

Defendant's trial and affirm the trial court's Judgments.

NO ERROR.

Judges CARPENTER and GRIFFIN concur.